UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                 :
JUDD BURSTEIN, P.C.,                 :
                 :
                       Plaintiff,    :        15 Civ. 5295 (KPF)
                 :
                       v.             :        OPINION AND ORDER
                 :
RAYMOND A. LONG,                   :
                 :
                       Defendant.   :
                 :
------------------------------------------------------X

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED: April 18, 2016

KATHERINE POLK FAILLA, District Judge:

The instant matter concerns a fee dispute between Defendant Raymond A. Long and his former counsel, Plaintiff Judd Burstein, P.C., with the dispute centering on whether the parties contracted to alter New York's default rules for attorney compensation agreements. Defendant has filed a motion to dismiss Plaintiff's Complaint, arguing that the parties expressly contracted to limit Plaintiff's right to obtain *quantum meruit* relief. Though Defendant's arguments have force, and may well prevail at a later stage of this litigation, they cannot succeed at this stage. Accordingly, and for the reasons stated in this Opinion, Defendant's motion is denied.

## BACKGROUND[1]

### A.    Factual Background

In May 2013, the parties entered into a retainer agreement (the "Retainer Agreement" or "Agreement") pursuant to which Plaintiff would represent

---

[1]    The facts set forth herein are drawn from the Complaint and the exhibits thereto, including the Retainer Agreement. (*See* Dkt. #1, 1-1). *See Rothman* v. *Gregor*, 220 F.3d

Defendant in two actions in the United States District Court for the District of Vermont (the "Primary Litigations"), as well as a potential third action in that court. (Compl. ¶ 6). The Retainer Agreement provided, in relevant part, that Defendant would pay Plaintiff a "flat fee" of $300,000, the balance of which was due by August 5, 2013. (Compl. Ex. A, § B ¶ 2). Paragraph 2 of the Agreement further stated that "**UNLESS THERE ARE ADDITIONAL FEES TO BE PAID AS A PERFORMANCE BONUS/CONTINGENCY FEE (DESCRIBED BELOW), THE $300,000 FLAT FEE PAYMENT WILL BE THE TOTAL AMOUNT OF FEES PAID BY YOU FOR [PLAINTIFF'S] REPRESENTATION OF YOU IN THE PRIMARY LITIGATIONS**." (*Id.* (capitalization and bolding in the original)).

Paragraph 3, immediately following the description of the $300,000 flat fee, explained that Defendant had an "absolute right" to terminate Plaintiff as counsel at any time. (Compl. Ex. A, § B ¶ 3). If Plaintiff either were discharged or withdrew as counsel prior to the completion of the Primary Litigations, "a fair and reasonable fee, which may include the return of some or all of the flat fee, would be determined in accordance with legally accepted standards." (*Id.*). Paragraph 4 of the Agreement then reiterated, somewhat confusingly, that "[a]s noted, no fees beyond the $300,000 flat fee due shall be payable unless [the parties were to] collect monies, through a settlement or judgment, in either or

---

81, 88 (2d Cir. 2000) (stating that a court resolving a motion to dismiss may consider the facts alleged in the complaint, together with "any statements or documents incorporated in it by reference, as well as ... documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit" (internal citations omitted)). For convenience, Defendant's brief in support of his motion (Dkt. #16) will be referred to as "Def. Br."; Plaintiff's brief in opposition (Dkt. #19) as "Pl. Opp."; and Defendant's brief in reply (Dkt. #20, 21) as "Def. Reply."

both of the Primary Litigations." (*Id.* at § B ¶ 4).  The remainder of Paragraph 4 set forth the apportionment of any recovery procured through settlement or litigation.  (*Id.*).

Some two years into their work together in the Primary Litigations, the attorney-client relationship between the parties deteriorated to the point that Plaintiff filed a contested motion to withdraw as counsel, which motion the district court in Vermont granted on July 8, 2015.  (Compl. ¶¶ 9-10).  To date, the $300,000 flat fee set forth in the Retainer Agreement constitutes the total attorney fees received by Plaintiff.  (*Id.* at ¶ 11).  Plaintiff now seeks to recover "a fair and reasonable fee in *quantum meruit*" for services rendered to Defendant, a fee which Plaintiff contends is "in no event less than $500,000," but against which the $300,000 flat fee would be credited.  (*Id.* at ¶ 11).

**B.     Procedural Background**

Plaintiff filed its Complaint on July 8, 2015.  (Dkt. #1).  Following a pre-motion conference, Defendant filed his motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on October 30, 2015.  (Dkt. #15, 16).  Plaintiff filed its opposition on November 30, 2015 (Dkt. #19), and Defendant concluded the briefing with his reply on December 11, 2015 (Dkt. #20, 21).

## DISCUSSION

**A.     Applicable Law**

   **1.     Motions to Dismiss Under Fed. R. Civ. P. 12(b)(6)**

Defendant has moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  When considering such a motion, a court should

"draw all reasonable inferences in Plaintiff's favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted) (quoting *Selevan* v. *N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009)).

A plaintiff will survive a motion to dismiss if he alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to nudge [a plaintiff's] claims across the line from conceivable to plausible." (internal quotation marks omitted)).  The Court is not, however, bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon* v. *Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (citation and internal quotation marks omitted).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco* v. *MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010).  "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc.* v. *Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d

4

Cir. 1995) (per curiam)).  In the present matter, in addition to considering the allegations in the Complaint, the Court considers the terms of the Retainer Agreement upon which this dispute is predicated.

### 2. Contract Interpretation Under New York Law[2]

"It is axiomatic under New York law ... that the fundamental objective of contract interpretation is to give effect to the expressed intentions of the parties." *Lockheed Martin Corp.* v. *Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011) (internal quotation marks omitted).  It is well established that the parties' intentions are generally discerned from the four corners of the document itself.  *MHR Capital Partners LP* v. *Presstek, Inc.*, 12 N.Y.3d 640, 645 (2009).  To that end, "[a] clear and unambiguous retainer agreement will be enforced according to its terms." *Ruthman, Mercadante & Hadjis, P.C.* v. *Nardiello*, 791 N.Y.S.2d 665, 667 (3d Dep't 2005).  Where, however, a retainer agreement is ambiguous, "all ambiguities should be resolved by the trier of fact." *Id.*; *accord Hellenic Greek Orthodox Church of St. George* v. *City of Schenectady*, 439 N.Y.S.2d 716, 717 (3d Dep't 1981).

Courts will find a contract ambiguous if its terms "could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Law Debenture Trust Co. of*

---

[2]  New York law governs the instant dispute pursuant to the choice of law provision of the Retainer Agreement.  (*See* Compl. Ex. A, § E ¶ 3).

5

*N.Y.* v. *Maverick Tube Corp.*, 595 F.3d 458, 466 (2d Cir. 2010) (quoting *Int'l Multifoods Corp.* v. *Commercial Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002)). Where a contract is ambiguous, "New York follows the well-established *contra proferentem* principle which requires that equivocal contract provisions are generally to be construed against the drafter." *First Am. Int'l Bank* v. *Cmty.'s Bank*, No. 10 Civ. 3775 (PAE), 2012 WL 4341740, at *7 (S.D.N.Y. Sept. 21, 2012) (quoting *McCarthy* v. *Am. Int'l Grp., Inc.*, 283 F.3d 121, 124 (2d Cir. 2002)).

**B.   Analysis**

    **1.   New York Law Entitles an Attorney Employed Pursuant to a Contingency Fee Agreement and Terminated for Reasons Other Than Cause to *Quantum Meruit* Relief**

Plaintiff argues that under New York law, counsel engaged pursuant to a contingency agreement who justifiably withdraws prior to the conclusion of litigation is entitled to recover fees in *quantum meruit.* (Pl. Opp. 6-7). Defendant contends, however, that the Agreement here is far from a standard contingency fee agreement, and that, in light of the $300,000 flat fee provision, Plaintiff's claim of entitlement to *quantum meruit* recovery is "implausible." (Def. Br. 3-4).

Plaintiff correctly states the default rule for attorneys engaged via contingency fee agreements and terminated prior to the conclusion of litigation. *See, e.g.*, *Matter of Cooperman*, 83 N.Y.2d 465, 473-74 (1994) ("If a client exercises the right to discharge an attorney after some services are performed but prior to the completion of the services for which the fee was agreed upon,

6

the discharged attorney is entitled to recover compensation from the client measured by the fair and reasonable value of the completed services."); *accord Universal Acupuncture Pain Servs., P.C.* v. *Quadrino & Schwartz, P.C.*, 370 F.3d 259, 263 (2d Cir. 2004). The New York Court of Appeals has justified this rule by explaining that, where an attorney's employment ends mid-litigation in a manner other than termination for cause,

> Permitting [the attorney] to recover the reasonable value of services rendered in *quantum meruit,* a principle inherently designed to prevent unjust enrichment, strikes the delicate balance between the need to deter clients from taking undue advantage of attorneys, on the one hand, and the public policy favoring the right of a client to terminate the attorney-client relationship without inhibition on the other.

*Demov, Morris, Levin & Shein* v. *Glantz,* 53 N.Y.2d 553, 558 (1981) (citation omitted). The logic of this rule applies with equal force to scenarios in which a certain fixed sum is required to be paid by a client up front, with additional compensation to be paid on a contingency basis: Because a client has an absolute right to terminate his or her counsel at any time, an attorney engaged pursuant to a mixed-fee agreement will have no breach of contract claim for any compensation that would have been paid pursuant to the contingency provisions, creating the same opportunity to take "undue advantage" that exists in a pure contingency arrangement. *Cf. Dialcom, LLC* v. *AT & T Corp.*, 964 N.Y.S.2d 58, at *8 (Sup. Ct. 2012) ("When a client discharges an attorney without cause, the attorney is entitled to recover compensation from the client measured by the fair and reasonable value of the services rendered whether that be more or less than the amount provided in the contract or retainer

agreement." (quoting *Lai Ling Cheng* v. *Modansky Leasing Co.*, 73 N.Y.2d 454, 457 (1989))).

Given these animating principles, Defendant's argument that Plaintiff advocates an "implausible" reading of the Retainer Agreement, insofar as Plaintiff claims entitlement to both (i) a flat fee, and (ii) *quantum meruit* relief as a result of the contingency fee provision, is unavailing. (*See* Def. Br. 3-4). On the contrary, Plaintiff presents a reasonable interpretation of the Retainer Agreement, if one considers solely the fact that compensation was to be based at least in part upon contingency. Reading the Retainer Agreement as a whole, however, the Court acknowledges that its structure and text give rise to an alternative reasonable interpretation, *viz.*, Defendant's reading, under which Plaintiff expressly capped its ability to recover in *quantum meruit*.

2.  **The Retainer Agreement Is Ambiguous Regarding Whether It Imposed a Cap on Plaintiff's Potential *Quantum Meruit* Recovery**

As discussed above, it is well settled that an attorney employed pursuant to a contingency fee agreement is entitled to relief in *quantum meruit*, and the mere presence of a flat fee does not necessarily alter that baseline rule. However, parties are free to contract around default rules, so long as their agreement is neither unconscionable nor violative of public policy. *Cf. King* v. *Fox*, 7 N.Y.3d 181, 191-92 (2006) (finding that even a fee agreement otherwise prohibited as unconscionable may be enforced if the parties entered into it knowingly and intentionally). Put another way, *quantum meruit* relief is available only where a contract does not expressly cover the terms of an

attorney's compensation in the event that the attorney is terminated or withdraws, *see, e.g.*, *Whitman Realty Grp., Inc.* v. *Galano*, 41 A.D.3d 590, 593 (2d Dep't 2007) (finding *quantum meruit* relief not available where the performance to be compensated fell within the contract's scope); that New York courts have found standard contingency fee agreements not to cover early termination or withdrawal does not preclude parties from expressly contracting for those scenarios, in which case *quantum meruit* relief would no longer be available. Thus, the question here is whether the Retainer Agreement expressly disclaimed Plaintiff's right to recover in *quantum meruit* over and above the $300,000 flat fee. The Court finds the Agreement ambiguous in this regard.

Paragraph 2 of the Agreement states, in capitalized and bolded text, that Defendant would pay a maximum fee of $300,000 for Plaintiff's representation services in the Primary Litigations. (Compl. Ex. A, § B ¶ 2). Paragraph 3 then states that in the event Plaintiff either were terminated without cause or obtained a court order permitting withdrawal, "a fair and reasonable fee, which may include the return of some or all of the flat fee, would be determined in accordance with legally accepted standards." (*Id.* at § B ¶ 3). Had the Agreement's discussion of fees ended there, the Court would be inclined to find that the parties had not contracted to alter the default rule in contingency fee cases, which provides that an attorney who withdraws prior to the conclusion of litigation may seek fees in *quantum meruit* — notwithstanding the otherwise all-or-nothing nature of a contingency fee

arrangement. *See Universal Acupuncture Pain Servs.*, 370 F.3d at 265 & n.1 (finding *quantum meruit* relief appropriate where the contingency fee retainer agreement expressly stated that "[i]n the event that there is no recovery on the claim, there shall be no legal fee for this matter").

The Agreement's fee discussion does not, however, end there: The very next sentence following the provision for "a fair and reasonable fee" states that, "As noted, no fees beyond the $300,000 flat fee shall be payable unless [the parties were to] collect monies, through a settlement or judgment, in either or both of the Primary Litigations." (*Id.* at § B ¶ 4). The Court acknowledges that Paragraph 4 is by no means an unequivocal rejection of Plaintiff's right to recover more than the $300,000 flat fee; it does, however, suffice to make the Agreement ambiguous. In particular, the Agreement is structured so as to (i) set forth the $300,000 flat fee (in bolded and capitalized text, no less); (ii) explain that if counsel were to withdraw prior to the conclusion of the litigation, it would be entitled to recovery in *quantum meruit*; and then, *immediately thereafter*, (iii) reiterate that, "[a]s noted" in the previously emphasized text, the maximum fee payable by Defendant will be $300,000. Under these circumstances, a reasonably intelligent reader could understand that while the "legally accepted standards" referenced in Paragraph 3 consist of *quantum meruit* relief, Paragraph 4 placed a $300,000 cap on the reasonable value of Plaintiff's services.[3]

---

3   Defendant points to the language in Paragraph 3 providing that the "fair and reasonable fee" to be awarded in the case of withdrawal prior to the conclusion of litigation "may include the return of some or all of the flat fee" as evidence that Paragraph 3 does not

Such a reading is particularly plausible, given that the parties had agreed that the $300,000 would be compensation for "all work required for discovery, pretrial proceedings, [and] trial or appeals in the Primary litigations." (Compl. Ex. A, § B ¶ 1).  The existence of a compensatory flat fee does not, itself, invalidate an attorney's right to *quantum meruit* relief pursuant to a contingency fee arrangement.  Taken together with the subsequent provisions, however, this valuation of Plaintiff's services lends support to a reasonable interpretation under which the parties agreed that the maximum fair value for Plaintiff's litigation-related services was $300,000, and any court determination pursuant to Paragraph 3 would simply be to determine whether Plaintiff was entitled to that maximum value.

In light of the retainer's ambiguity, dismissal is not appropriate at this stage in the litigation.  Ambiguity permits a court to look outside the four corners of an agreement in construing its meaning; it may be that discovery will produce evidence that Defendant clearly understood the agreement to permit attorney fees in excess of $300,000, the equivocal structure and the language of the agreement notwithstanding.  *See JA Apparel Corp.* v. *Abboud*,

---

contemplate *quantum meruit* relief, but rather only establishes that the flat fee described in Paragraph 2 is not a special nonrefundable retainer in contravention of public policy.  (Def. Br. 6).  *See generally Matter of Cooperman*, 83 N.Y.2d 465, 473-74 (1994) (finding special nonrefundable retainer fees violate public policy).  The Court declines to give this term the weight accorded it by Defendant.  The inclusion of language clarifying that a portion of the flat fee could be returned does not preclude an intention by the parties that Plaintiff receive compensation in *quantum meruit*; on the contrary, *quantum meruit* valuation would necessarily include a consideration of whether the fair value of Plaintiff's services was more *or less* than the payment it had received.  That said, the fact that Paragraph 3 expressly states that Plaintiff's recovery could be less than the flat fee, but makes no mention of the possibility that it could be greater, might fairly be considered to contribute to the ambiguity of the Agreement's compensation scheme.

11

568 F.3d 390, 397 (2d Cir. 2009) (stating that "where the contract language creates ambiguity, extrinsic evidence as to the parties' intent may properly be considered" and citing New York cases).  The Court reiterates, however, that ambiguities in contract are construed against the drafter.  *McCarthy*, 283 F.3d at 124.  Moreover, this rule is especially strictly applied to attorney retainer agreements.  *Albunio* v. *City of New York*, 23 N.Y.3d 65, 71 (2014) ("The general rule that 'equivocal contracts will be construed against the drafters' is subject to particularly rigorous enforcement in the context of attorney-client retainer agreements."); *see also Jacobson* v. *Sassower*, 66 N.Y.2d 991, 993 (1985) (noting that "as a matter of public policy, courts pay particular attention to fee arrangements between attorneys and their clients.").  The New York Court of Appeals has made clear that

> the importance of an attorney's clear agreement with a client as to the essential terms of representation cannot be overstated.  The client should be fully informed of all relevant facts and the basis of the fee charges, especially in contingent fee arrangements. Accordingly, as a matter of public policy, courts cast[] the burden on attorneys who have drafted the retainer agreements to show that the contracts are fair, reasonable, and fully known and understood by their clients.

*Albunio*, 23 N.Y.3d at 71 (internal quotation marks and citations omitted); *accord King*, 7 N.Y.3d at 191-92; *Shaw* v. *Manufacturers Hanover Trust Co.*, 68 N.Y.2d 172, 176 (1986).  Consequently, while its claim survives for the time being, Plaintiff appears to have an uphill battle ahead.

## CONCLUSION

For the reasons stated in this Opinion, Defendant's motion to dismiss is DENIED. The Clerk of Court is directed to terminate the motion at docket entry number 15. The parties are directed to appear for a conference in this matter on **Tuesday, May 3, 2016, at 3:30 p.m**. in Courtroom 618 of the Thurgood Marshall U.S. Courthouse, 40 Foley Square, New York, New York 10007. On or before **Thursday, April 28, 2016**, the parties shall submit a proposed Case Management Plan, as well as the joint status letter contemplated by the Plan.

SO ORDERED.

Dated:      April 18, 2016
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge