UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X

JUDD BURSTEIN, P.C.,

                                  Plaintiff,

             v.

RAYMOND A. LONG, M.D.,

                               Defendant.

------------------------------------------------------X

RAYMOND A. LONG, M.D.,

                         Counterclaimant,

             v.

JUDD BURSTEIN, P.C., and JUDD
BURSTEIN, individually,

                    Counter-Defendants.

------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: August 16, 2017

OPINION AND ORDER

15 Civ. 5295 (KPF)

KATHERINE POLK FAILLA, District Judge:

     After the acrimonious termination of their attorney-client relationship,

Judd Burstein, P.C., its eponymous principal (collectively, "Burstein"), and

Dr. Raymond A. Long traded incendiary claims concerning each other's

conduct. The Burstein firm initiated this action to recover unpaid attorneys'

fees from Long who, in response, filed counterclaims alleging breach of

contract, professional malpractice, and breach of fiduciary duty. Burstein now

moves to dismiss these counterclaims pursuant to Federal Rule of Civil

Procedure 12(b)(6). For the reasons outlined below, Burstein's motion to

dismiss is granted. Long will be granted leave to file an amended pleading, but

he should carefully consider the Court's analysis in this Opinion before so doing.

**BACKGROUND**[1]

**A.    Factual Background**

**1.    The Retainer Agreement**

The narrative set forth in this section is drawn principally from Long's pleading, and necessarily reflects his perspective of events.  On May 14, 2013, Burstein and Long executed a Retainer Agreement in which Burstein agreed to represent Long in four separate legal matters:

> (i) *Long* v. *Parry*, No. 12 Civ. 81 (WKS) (D. Vt.) (the "*Parry* Action"), a suit alleging malpractice against attorney Lloyd George Parry and his firm, Davis, Parry & Tyler, P.C., in connection with their representation of Long in *Long* v. *Quorum Health Res., LLC*, No. 05 Civ. 21 (WKS) (D. Vt.) ("*Quorum I*");

> (ii) a defamation action against Northwestern Medical Center, which action was eventually filed under the caption *Long* v. *Quorum Health Res., LLC*, No. 13 Civ. 189 (WKS) (D. Vt.) ("*Quorum II*");

---

[1]    This Opinion draws on facts from the Second Amended Answer and Counterclaims ("Def. Countercl." (Dkt. #52)).  For ease of reference, the Court refers to Burstein's memorandum in support of its motion to dismiss as "Pl. Br." (Dkt. #53-55), to Long's response as "Def. Opp." (Dkt. #58), and to Burstein's reply memorandum as "Pl. Reply" (Dkt. #61-62).

The Court also draws on facts pleaded in the Complaint ("Compl." (Dkt. #1)), and the Retainer Agreement attached thereto as Exhibit A.  The Court may consider the Complaint and the Retainer Agreement because the Second Amended Answer and Counterclaims incorporates them by reference.  *See, e.g.*, *Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (finding that district courts may consider "documents appended to the complaint or incorporated in the complaint by reference" when assessing the sufficiency of a pleading); *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (holding that documents that may be considered in determining a motion to dismiss are those that are "integral" to the claims alleged even if not incorporated in the complaint by reference).

> (iii) a potential claim for rescission of the settlement reached in *Quorum I* (the "Rescission Action"); and
>
> (iv) a potential *qui tam* suit against Northwestern Medical Center for alleged violations of the False Claims Act (the "FCA"), 31 U.S.C. §§ 3729-3733 (the "Qui Tam Action").

(Compl., Ex. A, § A; Def. Countercl. ¶¶ 24, 25). The *Parry* Action and *Quorum II* (together, the "Primary Litigations") were both active litigations. (Def. Countercl. ¶ 24). The other two matters were contemplated litigations that were never filed. (*Id.* at ¶ 25).

Burstein agreed to work on the Primary Litigations for a "flat fee of $300,000." (Def. Countercl. ¶ 27). The Retainer Agreement provided that the flat fee would be the total amount due to Burstein for the Primary Litigations, with a "bonus/contingency fee" to be paid if and upon collection of a favorable settlement or judgment. (*Id.* at ¶¶ 6, 27). Separate from the Primary Litigations, Burstein took the Rescission Action and the Qui Tam Action solely on a contingency basis. (*Id.* at ¶ 27).

Notably, the Retainer Agreement included three "exculpatory clauses" that granted Long the "absolute right to cancel" the Retainer Agreement at any time prior to the conclusion of the Primary Litigations or the two contemplated litigations. The exculpatory clauses each provided:

> If [Long] were to discharge [Burstein] as [his] attorneys before completion of the [action] and after it has started, or if [Burstein] were to secure a court order permitting it to withdraw its representation of [Long], a fair and reasonable fee would be determined in accordance with legally accepted standards.

(Compl., Ex. A, § B ¶ 3, § C ¶ 2, § D ¶ 2). After the parties executed the Retainer Agreement, Long paid Burstein the stipulated $300,000 flat fee. (Def. Countercl. ¶ 41).

### 2. Burstein's Representation of Long

#### a. The *Parry* Action

The *Parry* Action had been filed in the United States District Court for the District of Vermont in April 2012, more than a year before Long and Burstein executed the Retainer Agreement. (*Compare* Def. Countercl. ¶ 24 (April 2012), *with id.* at ¶ 41 (May 2013)). According to Long, upon retention, his new lawyers proceeded to do "nothing" on the *Parry* Action; Burstein waited a year to file a notice of appearance and failed to amend the complaint when leave was granted. (*Id.* at ¶¶ 41-43). Indeed, the defendants in the *Parry* Action, Lloyd George Parry and his firm, moved to dismiss the case for lack of prosecution, though this motion was denied. (*Id.* at ¶¶ 43-45).

In May 2015, Burstein moved to withdraw as counsel, citing conflicts with Long and with attorney Herbert Ogden, the latter of whom had initially filed the *Parry* Action and was then acting as Burstein's local counsel. (Def. Countercl. ¶¶ 46, 60). Burstein claimed to have ethical concerns with Long's use of documents in the *Parry* Action that had been exchanged pursuant to a protective order (the "*Triad* Protective Order") entered in *Quorum I*. (*Id.* at ¶¶ 60-62). Long read the *Triad* Protective Order to apply to those documents that had "specifically required markings," and he sought to use only documents which were not so designated. (*Id.* at ¶ 67). Nonetheless, Long

4

claimed that Burstein "panic[ked]" and disclosed to the *Parry* Court that Long was violating the *Triad* Protective Order. (*Id.* at ¶ 69).

Long maintains that Burstein's proffered reason for withdrawal was "pretextu[]al," and that the "real reason" was that the attorney thought the case was not sufficiently valuable or would take up too much of his time. (Def. Countercl. ¶¶ 47, 80). The *Parry* Court apparently disagreed: United States District Judge William K. Sessions of the District of Vermont granted Burstein's motion to withdraw on July 8, 2015, and that same day Burstein commenced the instant action against Long. (*Id.* at ¶ 48; Compl.). Long engaged other counsel to litigate the *Parry* Action to a judgment. (Def. Countercl. ¶ 88). His claims were ultimately dismissed when the court entered summary judgment in favor of Parry. (*Id.* at ¶ 22).

### b. The *Quorum II* Defamation Action

As contemplated in the Retainer Agreement, Burstein commenced a suit against Northwestern Medical Center for defamation under the caption *Long* v. *Quorum Health Res., LLC*, No. 13 Civ. 189 (WKS) (D. Vt.). (Def. Countercl. ¶¶ 18, 24). The case was also assigned to Judge Sessions. Burstein litigated the case to a judgment; Long's claims were dismissed, and he was not granted leave to amend his pleadings. (*Id.* at ¶ 18).

### c. The Rescission Action

No action for rescission of the *Quorum I* settlement agreement was ever filed; according to Long, Burstein "did nothing ... other than a trivial amount of research." (Def. Countercl. ¶ 51). The Retainer Agreement emphasized that

the ability to attack the settlement depended on information revealed through discovery in the *Parry* Action for malpractice against Long's counsel in *Quorum I*. (*Id.* at ¶ 52). Because Burstein did not take any discovery in the *Parry* Action, he did not file the Rescission Action. (*Id.*).

### d. The Qui Tam Action

Burstein also never filed the contemplated Qui Tam Action against Northwestern Medical Center. (Def. Countercl. ¶ 19). Indeed, according to Long, Burstein failed to act even though (i) Burstein agreed that the Qui Tam Action had potential value and (ii) Long pressed Burstein to file the claim. (*Id.* at ¶ 56). During Burstein's representation of Long, the statute of limitations on Long's potential *qui tam* claim expired. (*Id.* at ¶ 58).

### 3. The Damages Sought

Long asks for several types of damages on his counterclaims. *First*, he seeks over $500,000 on the breach of contract counterclaim. (Def. Countercl. ¶ 93). With respect to the *Parry* Action, he believes he is entitled to cover damages for fees incurred to engage alternate counsel or, alternatively, damages amounting to the settlement value of the *Parry* Action. (*Id.* at ¶¶ 88-89). With respect to the Qui Tam Action, Long seeks cover damages for fees incurred to hire successor attorneys. (*Id.* at ¶¶ 90-92). *Second*, Long seeks $5,000,000 on his legal malpractice counterclaim for the lost settlement or judgment value of the Qui Tam Action. (*Id.* at ¶ 102-03). *Finally*, Long seeks $500,000 in successor attorneys' fees for the breach of fiduciary duty counterclaim. (*Id.* at ¶¶ 109-10).

**B.     Procedural Background**

Burstein filed its Complaint on July 8, 2015.  (Dkt. #1).  Long moved to dismiss the Complaint on October 30, 2015 (Dkt. #15-19), and Burstein replied in opposition on December 14, 2015 (Dkt. #21).  After this Court denied Long's motion to dismiss on April 18, 2016 (Dkt. #18), Long filed his Answer to the Complaint on May 25, 2016 (Dkt. #27).

Subsequently, Long filed an amended Answer with Counterclaims against Burstein on September 22, 2016 (Dkt. #38), and filed a corrected version of the same pleading the next day.  (Dkt. #40).  Long filed a Second Amended Answer with Counterclaims on December 16, 2016.  (Dkt. #52). Burstein filed a motion to dismiss the counterclaims on January 30, 2017. (Dkt. #53-55).  Long filed his opposition to the motion to dismiss on March 15, 2017 (Dkt. #58), and briefing concluded on April 7, 2017, when Burstein filed a reply in support of its motion to dismiss (Dkt. #61-62).

## DISCUSSION

**A.     Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)**

A court evaluates a motion to dismiss a counterclaim under Federal Rule of Civil Procedure 12(b)(6) using the same standard as a motion to dismiss a complaint.  *A.V.E.L.A., Inc.* v. *Estate of Marilyn Monroe*, 131 F. Supp. 3d 196, 203 (S.D.N.Y. 2015) (internal citations omitted).  When evaluating a motion to dismiss counterclaims for failure to state a claim, a court "must accept the allegations in the counterclaim as true and draw all reasonable inferences in the counterplaintiff's favor."  *HSBC Bank USA, N.A.* v. *Hunter Delivery Sys.,*

*Inc.*, No. 09 Civ. 5562 (LTS) (HBP), 2010 WL 2598195, at *4 (S.D.N.Y. June 28, 2010) (citing *N.Y. Mercantile Exch.* v. *Intercontinental Exch.*, 323 F. Supp. 2d 559, 561 (S.D.N.Y. 2004)).

A counterclaim defendant prevails on a motion to dismiss if the counterclaim "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 554, 570 (2007)). And while a court should accept the counterclaim-plaintiff's allegations as true, it need not follow that course for any of counterclaim-plaintiff's legal conclusions. *See id.*

## B.     Long's Counterclaims Are Dismissed

### 1.     Breach of Contract[2]

#### a.     Applicable Law

Under New York law, a plaintiff states a claim for breach of contract by alleging "[i] the formation of a contract between the parties; [ii] performance by the plaintiff; [iii] failure of defendant to perform; and [iv] damages." *Orchard Hill Master Fund Ltd.* v. *SBA Commc'ns Corp.*, 830 F.3d 152, 156 (2d Cir. 2016) (internal quotation marks omitted) (quoting *Orlander* v. *Staples, Inc.*, 802 F.3d

---

[2]     In addition to the arguments enumerated in this section, Burstein alternatively argues that Long is barred from bringing the breach of contract claim for consequential damages under a theory of collateral estoppel. (Pl. Br. 10). In Burstein's view, Long is foreclosed from arguing that Burstein withdrew from the Retainer Agreement without "good" or "just" cause because Judge Sessions found in the *Parry* Action that the relationship had "broken down" for other ethical considerations. (*Id.* at 10-11). The Court's review of the Retainer Agreement discloses no requirement on Burstein's part to show "good" or "just" cause prior to withdrawal. Rather, the only explicit prerequisite for withdrawal is a court order granting such action. (Compl., Ex. A, ¶ B(3)). For this reason, the Court does not delve further into the issue.

289, 294 (2d Cir. 2015)).[3]  A plaintiff who can satisfy the first three elements

may pursue "'two distinct categories of damages: [i] general or market damages;

and [ii] special or consequential damages.'"  *Rensselaer Polytechnic Inst.* v.

*Varian, Inc.*, 340 F. App'x 747, 750 (2d Cir. 2009) (summary order) (quoting

*Schonfeld* v. *Hilliard*, 218 F.3d 164, 175 (2d Cir. 2000)).

General damages represent "the natural and probable consequences of

the breach of contract," *Biotronik A.G.* v. *Conor Medsystems Ireland, Ltd.*, 22

N.Y.3d 799, 805 (2014) (internal quotation marks omitted), whereas

consequential damages "do not directly flow from the breach," *id.*  The latter are

recoverable only when they are reasonably foreseeable or "within the

contemplation of the parties as the probable result of a breach at the time of or

prior to contracting." *Kenford Co., Inc.* v. *Cty. of Erie*, 73 N.Y.2d 312, 319, 321

(1989).

### b.    Discussion

At issue before the Court is whether Long's counterclaim seeks general or

consequential damages.[4]  On his breach of contract claim, Long seeks to

recover:  (i) the fees Long incurred for successor attorneys to complete the

"work that [Burstein] was obligated to perform" in the *Parry* Action, or,

alternatively, (ii) damages in the amount of the "substantial settlement value"

of the *Parry* Action, and (iii) the cost of engaging new attorneys to prepare and

---

[3]    New York law governs this dispute, per the choice-of-law provision in the Retainer
       Agreement.  (*See* Compl., Ex. A, § E ¶ 3).

[4]    The first three prongs of the breach of contract claim — existence of a contract,
       plaintiff's performance, and defendant's breach — are not disputed.

file the Qui Tam Action. (Def. Countercl. ¶¶ 88-90). While Long complains at length of Burstein's deficient performance under the Retainer Agreement — namely, his neglect of and withdrawal from the *Parry* Action and his failure to file the Qui Tam Action — the damages Long seeks are consequential damages not contemplated by the parties at the time the contract was formed and, thus, are not recoverable here.

Long makes several attempts to cast his prayer for relief to include recoverable, general damages. None is persuasive. Long correctly notes that general damages are meant to put a non-breaching party "in the same economic position he would have occupied" but for the breach. (Def. Opp. 3 (quoting *Oscar Gruss & Son, Inc.* v. *Hollander*, 337 F.3d 186, 196 (2d Cir. 2003))). In the same breath, however, Long argues that the cover legal fees or settlement value of the *Parry* Action are direct damages because they flow from Burstein's withdrawal from the case. (*Id.* at 3-4). They are not. The Court looks instead at what position Long would have been in but for Burstein's breach.

Looking first at the *Parry* Action, had Burstein litigated the matter to a judgment, Long would have been in the position of having paid the $300,000 flat fee and collected on any favorable judgment or settlement. While the parties surely hoped at the time they entered the Retainer Agreement that Long would prevail in the *Parry* Action, their optimism does not, on its own, support Long's present claim that Burstein's performance would have led him to collect a favorable judgment or settlement, such that he may seek the hypothetical

value of the claim as damages here. *Kenford*, 73 N.Y.2d at 320-21 (finding parties' expectation of increased property values did not make municipality liable when the land did not appreciate as anticipated).

Because these damages are too speculative to be foreseeable, Long must show through specific allegations that he and Burstein contemplated such an award as an appropriate measure of damages at the time they entered into the Retainer Agreement. *See Kenford*, 73 N.Y.2d at 320-21 (stating the longstanding rule in New York that damages not flowing directly from breach must have been contemplated by the parties at the outset); *see also Aristocrat Leisure Ltd.* v. *Deutsche Bank Trust Co. Americas*, 618 F. Supp. 2d 280, 302-03 (S.D.N.Y. 2009) (same). The Agreement helpfully contains solid evidence of the parties' view of appropriate damages at the time the contract was entered: If Burstein withdrew by court order — which he did — the contract's exculpatory clause provides for a "fair and reasonable fee, which may include the return of some or all of the flat fee, [to] be determined in accordance with legally accepted standards." (Compl., Ex. A, § B ¶ 3).

Long's conclusory statements that the *Parry* defendants "would have been willing to settle that action on terms acceptable to Dr. Long" because they had "multi-million dollar insurance coverage" (Def. Countercl. ¶ 89), and his concomitant speculation that he could prevail on appeal of the *Parry* Action (*id.* at ¶ 88), are a far cry from what is required to overcome the plain text of the exculpatory clause and put Burstein on the line for the judgment or settlement value of the case. *See Kenford*, 73 N.Y.2d at 320. Likewise, Long does not

plead any facts showing that the parties contemplated that Burstein would be liable for cover attorneys' fees if he withdrew from the action, in effect making him an underwriter of the litigation. These damages are similarly not recoverable. The most Long is entitled to recover for Burstein's breach on the *Parry* Action is the $300,000 flat fee.[5]

Turning to the Qui Tam Action, Burstein was bound by the Retainer Agreement to represent Long if (i) Long decided to proceed with the case and (ii) Burstein concluded that the claim would not be frivolous. Burstein took the matter on contingency: Had Burstein performed, he would have completed the work required to determine whether Long had a viable case under the False Claims Act and, if so, litigated the case.

Long's claim that Burstein's breach caused him to engage new counsel to handle the Qui Tam Action presents a close call. Arguably, Burstein's voluntary withdrawal from the Qui Tam Action is not covered by the exculpatory clause that provides only a "fair and reasonable fee" if Long cancels the agreement or Burstein secures a court order to withdraw. (Compl., Ex. A, § C ¶ 2). After all, neither of those scenarios is presented here. Even so, Long does not adequately plead any facts showing that the parties contemplated cover attorneys' fees as a recoverable measure of damages if Burstein breached.

---

[5]     Burstein urges the Court to adopt a "bright line rule" that the only relief available on a breach of contract claim against an attorney is a refund of the attorney's fee. (Pl. Br. 8-9). Having found based on the facts of this case that the proper measure of direct damages is a return of the flat fee, the Court declines to decide whether a bright-line rule demands this outcome.

Next, Long tries to escape the plain language of the contract by arguing that the reference to a "fee" in the exculpatory clause is ambiguous and does not speak to damages in the event of a breach. (Def. Br. 6). Long is correct that the "fair and reasonable fee" language is not a model of precision. But he is unable to convert that sensible point into a convincing argument that the parties intended the fee to include the array of damages he seeks on his breach of contract claim. Long argues the exculpatory clause permits Burstein to breach the agreement "with impunity." (*Id.* at 6-7). But Burstein is *not* permitted to breach the contract with no consequence; the exculpatory clause simply demands that the consequence be "fair and reasonable." Whether the agreement casts this as a "fee" or as "damages," the clause plainly evidences the intent of the parties to limit damages to a reasonable amount.

The Court observes that it is not clear from his counterclaim whether Long seeks the direct damages to which he may be entitled, i.e., a return of the $300,000 flat fee. Burstein's motion to dismiss the counterclaim for breach of contract is granted insofar as Long seeks the three types of damages set forth in his Counterclaims: (i) cover damages for successor attorneys to complete the *Parry* Action; (ii) the "substantial settlement value" of the *Parry* Action; and (iii) cover damages for successor attorneys to prepare and file the Qui Tam Action.

## 2. Legal Malpractice

### a. Applicable Law

To prevail on a legal malpractice claim under New York law, a plaintiff must show "[i] that the attorney was negligent, [ii] that the negligence was a proximate cause of the injury [iii] and that [the plaintiff] suffered actual and ascertainable damages." *Rubens* v. *Mason*, 527 F.3d 252, 254-55 (2d Cir. 2008) (internal quotation marks and citation omitted). A plaintiff demonstrates negligence by showing that the attorney "failed to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession." *Rohe* v. *Bertine, Hufnagel, Headley, Zeltner, Drummon & Dohn LLP*, 160 F. Supp. 3d 542, 548 (S.D.N.Y. 2016) (quoting *Rudolf* v. *Shayne, Dachs, Stanisci, Corker & Sauer*, 8 N.Y.3d 438, 442 (2007)).

A plaintiff must prove proximate cause through a "case within a case" such that "a reasonable fact-finder in the present case could conclude that a reasonable fact-finder in the underlying suit would have arrived at a different result but for the attorney's negligence." *Riker* v. *Premier Capital, LLC*, No. 15 Civ. 8293 (ALC), 2016 WL 5334980, at *9 (S.D.N.Y. Sept. 22, 2016) (internal quotation marks and citation omitted). "[M]ere speculation of a loss resulting from an attorney's alleged omission[] is insufficient to sustain a prima facie case sounding in legal negligence." *Id.* at *10 (internal quotation marks and citation omitted); *see also Pellegrino* v. *File*, 738 N.Y.S.2d 320, 323 (1st Dep't 2002) ("[I]njuries predicated on speculation cannot suffice for a malpractice claim."). Rather, a plaintiff must show a "likelihood of success absent [the]

misconduct." *Riker*, 2016 WL 5334980, at *9; *see also Davis* v. *Klein*, 88
N.Y.2d 1008, 1009-10 (1996) ("[A] plaintiff must demonstrate that the plaintiff
would have succeeded on the merits of the underlying action but for the
attorney's negligence.").

### b.  Discussion

To ascertain whether Long's counterclaim satisfies the "case within a
case" requirement, the Court must determine whether his fraud claims are
cognizable under the FCA, an anti-fraud statute that permits the Government,
or a relator in a *qui tam* suit, to bring a claim against an entity that "knowingly
presents a false or fraudulent claim for payment or approval to the Federal
Government." *State Farm Fire & Cas. Co.* v. *U.S. ex rel. Rigsby*, 137 S. Ct. 436,
440 (2016).  A *qui tam* relator must show that the defendant "(i) made a claim,
(ii) to the United States [G]overnment, (iii) that is false or fraudulent, (iv)
knowing of its falsity, and (v) seeking payment from the federal treasury."
*Mikes* v. *Straus*, 274 F.3d 687, 695 (2d Cir. 2001) *abrogated on other grounds
by Univ. Health Servs., Inc.* v. *U.S. ex rel Escobar*, 136 S. Ct. 1989 (2016).  The
Court believes that Long seeks to ground his FCA claim on the "implied
certification theory," which holds an entity liable for requests for payment that
imply compliance with federal law.  *Univ. Health Servs.*, 136 S. Ct. at 1999.

Burstein correctly points out that this Court must examine Long's FCA
claim under the heightened pleading standard of Federal Rule of Civil
Procedure 9(b).  (Pl. Br. 14).  *See also U.S. ex rel. Polansky* v. *Pfizer, Inc.*, 822
F.3d 613, 617-18 (2d Cir. 2016).  The Second Circuit has very recently clarified

that a *qui tam* relator satisfies the requirements of Rule 9(b) "by making plausible allegations creating a strong inference that specific false claims were submitted to the government and that the information that would permit further identification of those claims is peculiarly within the opposing party's knowledge." *U.S. ex rel. Chorches for Bankruptcy Estate of Fabula* v. *Am. Med. Response, Inc.*, — F.3d —, 2017 WL 3180616, at *10 (2d Cir. July 27, 2017). Long's pleading falls far short of this standard.

Long alleges that in "November/December of 2003 five of Dr. Long's patients were infected at [Northwestern Medical Center] through operating room supplies that were intentionally contaminated with life[-]threatening bacteria." (Def. Countercl. ¶ 33). Long had the bacteria tested and found that it was "deadly"; he reported these allegations to the Illinois Attorney General and, after a dispute with the hospital, he resigned in 2004. (*Id.* at ¶¶ 34-36). Long contends that the Qui Tam Action "had substantial value" and that "[a] timely [FCA] action could have been commenced … between May 14, 2013 and July 8, 2015." (*Id.* at ¶¶ 58-59). Despite his insistence that the case was meritorious, Burstein did almost no work on the Qui Tam Action, and the statute of limitations expired. (*Id.* at ¶¶ 56-58). As a result of Burstein's alleged malpractice, Long believes he lost $5 million in settlement or judgment value of the case. (*Id.* at ¶¶ 95, 103).

Burstein, on the other hand, argues that Long does not plead with particularity any facts about actual false claims submitted to the federal government. (Pl. Br. 15-16). Indeed, Long broadly states — with no context or

detail — that during his time at Northwestern and in the course of litigating the *Quorum I* matter thereafter, he came to believe that Northwestern was filing "fraudulent Medicare and Medicaid claims." (Def. Countercl. ¶ 25). He does not explain how he arrived at that belief; how it relates to the alleged infections of his patients; or any other facts to bolster his claim. While Long is not expected to plead facts likely known only to Northwestern, *see Chorches*, 2017 WL 3180616, at *10, he must still allege plausible facts surrounding why *he* believes they violated the FCA, and those details are surely known to Long. The Court finds that Long's pleading does not meet the standard imposed on *qui tam* relators under Rule 9(b), and thus fails to show he would have obtained a better result but for Burstein's alleged malpractice.[6]

The Court also finds that Long's FCA claim was time-barred by the time he retained Burstein in 2013. The FCA provides that a civil action must be brought within "6 years [of] the date on which the violation of section 3729 is committed" or "3 years [of] the date when facts material to the right of action are known or reasonably should have been known" by the Government, and "in no event" may be brought "more than 10 years after the date on which the

---

[6]    Burstein argues that Long's FCA claims are likewise barred by the prohibition against *qui tam* claims based on information in the public domain. Long vaguely indicates that he learned of Northwestern's allegedly fraudulent acts during "various litigations with [Northwestern]." (Def. Countercl. ¶ 53). Burstein is correct that information Long learned during discovery in prior civil litigations would be considered in the public domain and, accordingly, could not form the basis of a *qui tam* action for violations of the FCA. *U.S. ex rel. Kreindler & Kreindler* v. *United Techs. Corp.*, 985 F.2d 1148, 1157-58 (2d Cir. 1993) (finding that "information gleaned in litigation" is considered public for purposes of the FCA). It is not clear from his counterclaim whether Long was the original source of the information he learned in prior litigations but, if he was not, his *qui tam* claim would fail for this reason as well. *Id.* at 1158; 31 U.S.C. § 3730(e)(4)(A).

violation was committed." 31 U.S.C. § 3731(b). Long's employment at Northwestern ended in 2004. (Def. Countercl. ¶ 33). He alleges that he learned of misconduct at Northwestern through litigation after 2004 but does not state when. (*Id.* at ¶ 53). Moreover, he does not plead any facts that suggest he is entitled to the FCA's three-year tolling period which could, potentially, extend Long's time to file for ten years following Northwestern's conduct. Based on the facts alleged in Long's Counterclaims, the Court must conclude that the statute of limitations on the Qui Tam Action had run by 2010 — well before Long retained Burstein as his attorney — and, accordingly, that Long could not have prevailed on an FCA claim had Burstein filed it.

In sum, Long fails to show through a "case within a case" that Burstein was the proximate cause of the lost value of the Qui Tam Action. His counterclaim does not plead sufficient facts to show that he could have prevailed in the Qui Tam Action had Burstein upheld his contractual duty to prepare and litigate the claim. Because a reasonable factfinder in the instant case could not determine that a reasonable factfinder in the underlying Qui Tam Action would have found in Long's favor, his claim for malpractice cannot stand.

Long's non-FCA malpractice claims can swiftly be rejected, because the Court agrees with Burstein that Long has failed to state adequately a claim for Burstein's conduct in the *Parry* Action, *Quorum II*, or the Rescission Action. (*See* Pl. Br. 21-22). Long's malpractice counterclaim contains ten paragraphs; each one relates to the Qui Tam Action. (Def. Countercl. ¶¶ 94-103). Long

argues that his malpractice claim contains a catch-all clause that incorporates by reference all of his prior allegations. (Def. Opp. 13). This is not enough to plead adequately a claim for relief: The malpractice claim does not, on its face, give Burstein "fair notice of what the claim is" beyond the Qui Tam Action, and certainly does not allege plausible facts to support a claim for malpractice in the *Parry* Action, *Quorum II*, or the Rescission Action. *Twombly*, 550 U.S. at 555 (quoting *Conley* v. *Gibson*, 355 U.S. 41, 47 (1957)). Burstein's motion to dismiss Long's claim for legal malpractice is granted.

### 3. Breach of Fiduciary Duty

Long's final cause of action alleges that Burstein breached a fiduciary duty to Long by: (i) "act[ing] in their own interest to the detriment of the interests of Dr. Long" (Def. Countercl. ¶ 105); (ii) making misstatements to the *Parry* Court (*id.* at ¶ 106); and (iii) not seeking to modify the *Triad* Protective Order (*id.* at ¶ 107; Def. Opp. 23). He further argues that Burstein committed these breaches because the firm was actively trying to withdraw from the *Parry* Action. (Def. Countercl. ¶ 108). Burstein argues for dismissal, noting that Long's claim for breach of fiduciary duty is redundant of his claim for breach of contract. (Pl. Br. 23-24).[7] And, in point of fact, the two claims are based on

---

[7] Burstein also argues that Long's counterclaim for breach of fiduciary duty is duplicative of his claim for legal malpractice. The Court disagrees. As the Court has explained, Long's legal malpractice counterclaim only meets the Rule 8 pleading standard as to the Qui Tam Action. The Court finds that Long's breach of fiduciary duty counterclaim only alleges sufficient facts about the *Parry* Action and, thus, is not co-extensive with his claim for malpractice. If, however, Long's fiduciary duty claim could be read to extend to the Qui Tam Action, the claim, indeed, would be dismissed as duplicative of the malpractice claim. *See Nordwind* v. *Rowland*, 584 F.3d 420, 432-33 (2d Cir. 2009) ("Under New York law, where a claim for breach of fiduciary duty is premised on the same facts and seek[s] the identical relief as a claim for legal malpractice, the claim for

the same operative facts — namely, Burstein's alleged mishandling of the *Parry* Action. (Def. Countercl. ¶¶ 83-89, 105-08). In response, Long effectively concedes the point that overlapping claims for breach of contract and breach of fiduciary duty cannot lie, but argues that his claim for breach of fiduciary duty stands because it seeks different damages than those sought for breach of contract. (Def. Opp. 22-23).

Both parties miss the mark. The general rule in New York is that a claim for breach of fiduciary duty "must be dismissed as duplicative of a breach of contract claim *if the parties owe each other no duty independent of the contract itself.*" *Perkins* v. *Am. Transit Ins. Co.*, No. 10 Civ. 5655 (CM), 2013 WL 174426, at *10 (S.D.N.Y. Jan. 15, 2013) (emphasis added). Here, importantly, the Retainer Agreement created a relationship between Burstein and Long that was not only contractual, but also fiduciary. *See Ulico Cas. Co.* v. *Wilson, Elser, Moskowitz, Edelman & Dicker*, 865 N.Y.S.2d 14, 20 (1st Dep't 2008) ("It is axiomatic that the relationship of attorney and client is fiduciary."). And where a fiduciary duty exists independent from a contract — even where that duty arises from the contract — claims for breach of contract and breach of fiduciary duty that arise from the same facts can stand together. *See Bullmore* v. *Banc of Am. Sec. LLC*, 485 F. Supp. 2d 464, 470 (S.D.N.Y. 2007) (declining to

---

fiduciary duty is redundant and should be dismissed." (internal quotation marks omitted)); *Weil, Gotshal & Manges, LLP* v. *Fashion Boutique of Short Hills, Inc.*, 780 N.Y.S.2d 593, 596 (1st Dep't 2004) ("As to the claim for breach of fiduciary duty, we have consistently held that such a claim, premised on the same facts and seeking the identical relief sought in the legal malpractice cause of action, is redundant and should be dismissed.").

dismiss claims for breach of fiduciary duty and breach of contract as duplicative, and noting that attorneys owe clients a fiduciary duty separate and apart from their contractual obligation); *GLM Corp.* v. *Klein*, 665 F. Supp. 283, 286 (S.D.N.Y. 1987) (same).

Having found that the breach of fiduciary duty claim cannot be properly dismissed as duplicative, the Court looks next to whether Long adequately pleads this claim and finds that he has not. To establish a *prima facie* case for breach of fiduciary duty in New York, a plaintiff must allege "(i) a duty; (ii) a knowing breach of the duty; and (iii) damages resulting therefrom." *Johnson* v. *Nextel Commc'ns, Inc.*, 660 F.3d 131, 141 (2d Cir. 2011). Even assuming that Burstein breached his fiduciary duty, Long still fails to state a plausible claim for damages. Long seeks cover legal fees for the cost of paying counsel to litigate the *Parry* Action, but he has not shown that these damages flow from Burstein's alleged breach.

Long's counterclaim alleges that Burstein breached his fiduciary duty by acting in his own self-interest, making misstatements to the *Parry* Court, and failing to modify the *Triad* Protective Order. He does not explain why these actions caused him to retain new counsel, and the Court observes that Long would have incurred these cover legal fees following Burstein's withdrawal even without these alleged breaches. He thus fails to make out a *prima facie* case for breach of fiduciary duty. *Margrabe* v. *Sexter & Warmflash, P.C.*, 353 F. App'x 547, 549 (2d Cir. 2009) (summary order) (finding that cover legal fees were not cognizable damages for breach of fiduciary duty where plaintiff would

have incurred such fees even without the alleged breach). If Long intends to claim that Burstein's withdrawal from the *Parry* Action effected a breach of fiduciary duty, that is not evident from the face of the counterclaim.[8] Burstein's motion to dismiss Long's claim for breach of fiduciary duty is granted.

## C.    Long Is Given Leave to Replead

In a terse paragraph at the conclusion of his opposition memorandum, Long requests leave to replead. (Def. Opp. 24). Long has previously amended his Counterclaims, and offers no suggestion for how he can remedy the defects identified in this Opinion. The Second Circuit has intimated that leave could be denied on this basis alone. *See, e.g.*, *In re Tamoxifen Citrate Antitrust Litig.*, 466 F.3d 187, 220 (2d Cir. 2006) (finding it "within the court's discretion to deny leave to amend implicitly by not addressing the request when leave is requested informally in a brief filed in opposition to a motion to dismiss"), *abrogated on other grounds by F.T.C.* v. *Actavis, Inc.*, 133 S. Ct. 2223 (2013); *cf. F5 Capital* v. *Pappas*, 856 F.3d 61, 90 (2d Cir. 2017) (affirming denial of request for leave to amend where "[t]o this day, [plaintiff] has not explained how it could amend the complaint to … otherwise survive a motion to dismiss").

---

[8]     Long's opposition memorandum indicates that he does consider Burstein's withdrawal from the *Parry* Action to be a breach of fiduciary duty. (Def. Opp. 23). Unfortunately for Long, this cannot inform the Court's analysis of his counterclaim as it appears in his Second Amended Answer and Counterclaims. *Fonte* v. *Bd. of Managers of Continental Towers Condominium*, 848 F.2d 24, 25 (2d Cir. 1988) ("Factual allegations contained in legal briefs or memoranda are also treated as matters outside the pleading for purposes of Rule 12(b).").

However, in another line of cases, the Second Circuit explained that "the 'permissive standard' of Rule 15 'is consistent with [its] strong preference for resolving disputes on the merits.'" *Loreley Fin. (Jersey) No. 3 Ltd.* v. *Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (quoting *Williams* v. *Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011) (per curiam)). These cases teach that "[t]he rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." *AEP Energy Servs. Gas Holding Co.* v. *Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010) (quoting *Block* v. *First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)).

As should be clear from this Opinion, the Court is skeptical of Long's ability to plead adequately his proposed counterclaims. It will, however, afford him one last opportunity to replead.

## CONCLUSION

For the reasons set forth above, Burstein's motion to dismiss is GRANTED. Long's application for leave to file an amended pleading is also GRANTED. A Third Amended Answer and Counterclaims is due on or before **September 8, 2017**; and Burstein's response thereto is due on or before **September 28, 2017.**

The Clerk of Court is directed to terminate the motion at docket entry 53.

SO ORDERED.

Dated:    August 16, 2017
        New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge