UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X
                                                      :
JUDD BURSTEIN, P.C.,                                  :
                                                      :
                                 Plaintiff,           :
                                                      :
                v.                                    :
                                                      :
RAYMOND A. LONG, M.D.,                                :
                                                      :
                                 Defendant.           :          15 Civ. 5295 (KPF)
                                                      :
------------------------------------------------------ X
                                                      :          <u>OPINION AND ORDER</u>
RAYMOND A. LONG, M.D.,                                :
                                                      :
                                 Counterclaimant,     :
                                                      :
                v.                                    :
                                                      :
JUDD BURSTEIN, P.C., and JUDD                         :
BURSTEIN, individually,                               :
                                                      :
                                 Counter-Defendants.  :
                                                      :
------------------------------------------------------ X

KATHERINE POLK FAILLA, District Judge:

The instant matter addresses the latest pleading in a longstanding fee
dispute between, on one side, Raymond A. Long ("Long"), and, on the other
side, his former counsel, Judd Burstein, P.C., and its principal, Judd Burstein
(collectively, "Burstein"). Since the breakdown of this attorney-client
relationship, each side has filed claims alleging the other's breach of their
obligations under a Retainer Agreement entered into on May 14, 2013.
Burstein drew blood first, initiating this action to recover attorneys' fees from

Long. Long then responded by counterclaiming for breach of contract, professional malpractice, and breach of fiduciary duty.

In an Opinion and Order dated August 16, 2017, the Court granted Burstein's motion to dismiss Long's counterclaims, while permitting Long to file an amended pleading. *See Burstein* v. *Long*, No. 15 Civ. 5295 (KPF), 2017 WL 3535004 (S.D.N.Y. Aug. 16, 2017) ("*Burstein II*").[1] Long filed a Third Amended Answer and Counterclaims ("TAAC") on October 17, 2017, and Burstein moved to dismiss it on January 6, 2018. For the reasons that follow, Burstein's motion is granted in part and denied in part.

## BACKGROUND[2]

### A.    Factual Background

The Court assumes familiarity with its prior Opinion in this matter, *see generally Burstein II*, and only briefly recites the facts relevant to the instant motion. Long practiced as an orthopedic surgeon at Northwestern Medical

---

[1]    An earlier decision in the case had issued on April 18, 2016. *See Judd Burstein, P.C.* v. *Long*, 180 F. Supp. 3d 308 (S.D.N.Y. 2016) ("*Burstein I*").

[2]    This Opinion draws on facts from the Third Amended Answer and Counterclaims ("TAAC" (Dkt. #83)), the well-pleaded facts of which are taken as true for purposes of this motion. *See Natural Res. Def. Council* v. *Johnson*, 461 F.3d 164, 171 (2d Cir. 2006); *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 679 (2009). The Court also draws on facts pled in the Complaint ("Compl." (Dkt. #1)), and the Agreement attached thereto as Exhibit A. The Court may consider the Complaint and Agreement because the TAAC incorporates them by reference. *See, e.g., Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (finding that district courts may consider "documents appended to the complaint or incorporated in the complaint by reference" when assessing the sufficiency of a pleading); *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (holding that documents that may be considered in determining a motion to dismiss are those that are "integral" to the claims even if not incorporated in the complaint by reference). For ease of reference, Burstein's moving brief is referred to as "Pl. Br." (Dkt. #93); Long's brief in opposition as "Def. Opp." (Dkt. #102); and Burstein's reply as "Pl. Reply" (Dkt. #108).

Center ("NMC"), from September 2001 until April 2004. (TAAC ¶ 34). In 2003, five of Long's patients developed infections. (*Id.* at ¶ 35). Long alleges that these infections were caused by hospital personnel who "intentionally contaminated [operating room supplies] with life threatening bacteria[.]" (*Id.*). NMC did not immediately investigate the cause of the infections, instead demanding that Long undergo psychiatric evaluation. (*Id.* at ¶ 43). Long resigned, following which NMC "filed an Adverse Action Report" stating that "Long resigned under an investigation into his medical competence." (*Id.* at ¶ 44). NMC did not implement any new procedures to prevent hospital personnel from intentionally contaminating operating room supplies in the future. (*Id.* at ¶ 131). Subsequent investigations identified Long's own use of antiseptic techniques during surgery, and a broken air hose in the sterilization system, as possible sources of the infections. (*Id.* at ¶¶ 133, 143).

On May 14, 2013, Burstein and Long executed a Retainer Agreement (the "Agreement") in which, in relevant part, Burstein agreed to represent Long in two legal matters. One was a legal malpractice suit against one of Long's former attorneys (the "*Parry* Action"), which arose from that former attorney's representation of Long in a defamation suit against NMC (the "*Triad* Action"). (Compl., Ex. A, § A; TAAC ¶¶ 25-29). The other was a potential *qui tam* suit against NMC for allegedly filing fraudulent Medicare and Medicaid claims in violation of the False Claims Act, 31 U.S.C. §§ 3729-3733 (the "Qui Tam Action"). Pursuant to the Agreement, Long paid Burstein a flat fee of $300,000 for certain litigation services, including "all work required for discovery, pretrial

proceedings, trial or appeals" in the *Parry* Action. (Compl., Ex. A, § B ¶ 1; TAAC ¶¶ 16, 27). Burstein agreed to represent Long in the Qui Tam Action "in return for a pure contingency fee[.]" (Compl., Ex. A, § D ¶ 1; TAAC ¶ 28). For both legal matters, the Agreement included "exculpatory clauses" that provided:

> If [Long] were to discharge [Burstein] as [his] attorneys before completion of the [action] and after it has started, or if [Burstein] were to secure a court order permitting it to withdraw its representation of [Long], a fair and reasonable fee would be determined in accordance with legally accepted standards.

(Compl., Ex. A, § B ¶ 3, § D ¶ 2).

## B.    Procedural Background

Burstein initiated this action by filing a Complaint on July 8, 2015, seeking to recover unpaid attorneys' fees from Long. (Dkt. #1). Long filed an amended Answer with Counterclaims against Burstein on September 22, 2016, alleging breach of contract, professional malpractice, and breach of fiduciary duty (Dkt. #38), and filed a corrected version of the same pleading the next day (Dkt. #40). Long filed a Second Amended Answer with Counterclaims ("SAAC") on December 16, 2016. (Dkt. #52). Burstein moved to dismiss the SAAC counterclaims on January 30, 2017. (Dkt. #53-55). The Court granted Burstein's motion to dismiss and also granted Long leave to file another amended pleading. *See Burstein II*, 2017 WL 3535004, at *1.

On October 17, 2017, Long filed his Third Amended Answer and Counterclaims ("TAAC"). (Dkt. #83). Burstein moved to dismiss the TAAC counterclaims on January 6, 2018. (Dkt. #93). Long filed his opposition to

that motion on March 3, 2018 (Dkt. #100), and filed an amended version of the same opposition two days later (Dkt. #102). Burstein filed a reply in support of its motion on March 26, 2018. (Dkt. #108).

On September 20, 2018, the Court filed an unredacted copy of this Opinion under seal. On that same day, the Court provided the parties with a copy of the unredacted Opinion and allowed the parties to propose redactions. Pursuant to the Court's directions, the parties will file their materials publicly by October 12, 2018, with certain limited categories of information redacted in accordance with *Lugosch* v. *Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006).  On that date, the parties will also file a joint letter suggesting redactions to the Opinion. Taking the parties' suggestions into consideration, the Court will then file the redacted Opinion publicly. The Court now considers the pending motion to dismiss.

## DISCUSSION

### A.    Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

A court evaluates a motion to dismiss a counterclaim under Federal Rule of Civil Procedure 12(b)(6) using the same standard as a motion to dismiss a complaint. *A.V.E.L.A., Inc.* v. *Estate of Marilyn Monroe*, 131 F. Supp. 3d 196, 203 (S.D.N.Y. 2015) (internal citations omitted). When considering a motion to dismiss under Rule 12(b)(6), the court must "draw all reasonable inferences in [the non-movant's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal citations

and quotation marks omitted). A counterclaimant prevails on a motion to dismiss if the counterclaim "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)).

## B. Long's Counterclaims Are Dismissed in Part

### 1. Long's Breach of Contract Counterclaim Is Dismissed in Part

#### a. Applicable Law

A plaintiff states a claim for breach of contract under New York law by alleging "[i] the formation of a contract between the parties; [ii] performance by the plaintiff; [iii] failure of defendant to perform; and [iv] damages." *Orchard Hill Master Fund Ltd.* v. *SBA Commc'ns Corp.*, 830 F.3d 152, 156 (2d Cir. 2016) (internal quotation marks omitted) (quoting *Orlander* v. *Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015)).[3] A plaintiff who can satisfy the first three elements may pursue "two distinct categories of damages: [i] general or market damages; and [ii] special or consequential damages." *Rensselaer Polytechnic Inst.* v. *Varian, Inc.*, 340 F. App'x 747, 750 (2d Cir. 2009) (summary order) (quoting *Schonfeld* v. *Hilliard*, 218 F.3d 164, 175 (2d Cir. 2000)). General damages represent "the natural and probable consequences of the breach of contract," whereas consequential damages "do not directly flow from the breach[.]" *Biotronik A.G.* v. *Conor Medsystems Ir., Ltd.*, 22 N.Y.3d 799, 805 (2014)

---

[3]     New York law governs this dispute, per the choice-of-law provision in the Agreement. (*See* Compl., Ex. A, § E ¶ 3).

(internal quotation marks omitted). Consequential damages are recoverable only when they are either "reasonably foresee[able]" or "within the contemplation of the parties as the probable result of a breach at the time of or prior to contracting." *Kenford Co., Inc.* v. *Cty. of Erie*, 73 N.Y.2d 312, 319, 321 (1989).

### b. Discussion

Burstein has moved to dismiss Long's breach of contract counterclaim solely "to the extent it seeks consequential damages for legal services rendered by successor attorneys," and *not* to the extent that it "seeks the return of the $300,000" retainer fee. (Pl. Br. 1, 4 n.4). As explained in the Court's prior Opinion, the SAAC failed to state a claim for breach of contract because: it sought, as damages, legal fees for successor attorneys in the *Parry* and Qui Tam Actions; those fees were "special or consequential damages" that did not flow directly from Burstein's alleged breach of the Agreement and were "too speculative to be foreseeable"; and the SAAC did not allege that the parties contemplated such fees as a measure of damages at the time of contracting. *Burstein II*, 2017 WL 3535004, at *4-6 (quoting *Biotronik A.G.*, 22 N.Y.3d at 805).

Long's TAAC again seeks, as damages, legal fees for successor attorneys in the *Parry* and Qui Tam Actions. (TAAC ¶¶ 104, 108). Burstein contends that, in doing so, the TAAC once again fails to state a claim for consequential damages arising from Burstein's alleged breach of the Agreement. (Pl. Br. 4-6). The Court agrees. The TAAC alleges no new facts suggesting that such

damages were reasonably foreseeable.[4] Nor does the TAAC allege any new facts suggesting that, at the time of contracting, the parties contemplated damages in the form of such fees for the *Parry* Action. (TAAC ¶ 104). Regarding the Qui Tam Action, the TAAC merely adds the conclusory statement that the "parties contemplated that in the event [of a breach] … Long would be damaged by having to hire other attorneys to perform the services the Burstein Firm had agreed to perform with respect to the *Qui Tam Action.*" (*Id.* at ¶ 105). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a motion to dismiss. *Iqbal*, 556 U.S. at 678. Accordingly, to the extent that the TAAC seeks recovery of cover legal fees for successor attorneys in the *Parry* and Qui Tam Actions, it fails to correct the inadequacies of Long's prior pleading and thus fails to state a claim for breach of contract for substantially the reasons given in the Court's prior Opinion. *See Burstein II*, 2017 WL 3535004, at *4-6.

Long's arguments in opposition do not persuade. Rather than supplement the factual allegations in the TAAC, Long's opposition memorandum merely repeats a view that Long previously presented to the Court: namely, that the plain language of the Agreement manifests the parties' intent to include successor attorneys' fees as damages. (Def. Opp. 4, 7). In

---

[4]    Long's memorandum in opposition makes the conclusory assertion that he was compelled to pay such fees "as a direct and foreseeable result," appearing to imply that the fees were recoverable, general damages. (Def. Opp. 9). The Court will not consider allegations made in the memorandum but not in the TAAC. *See Burstein* v. *Long*, No. 15 Civ. 5295 (KPF), 2017 WL 3535004, at *9 n.8 (S.D.N.Y. Aug. 16, 2017). In any event, conclusory assertions, without more, do not suffice to defeat a motion to dismiss. *See Iqbal*, 556 U.S. at 678.

support of this position, Long reads the Agreement's provision that the $300,000 fee covers "*all work* required" for litigation in the *Parry* Action to imply that, in the event of Burstein's breach, Burstein "would bear the sole responsibility for any fees incurred above $300,000." *Id.*[5] The Court already rejected this argument when it held that the Agreement "contains solid evidence of the parties' view of appropriate damages at the time the contract was entered: If Burstein withdrew by court order — which he did — the contract's exculpatory clause provides for a 'fair and reasonable fee ... [to] be determined in accordance with legally accepted standards.'" *Burstein II*, 2017 WL 3535004, at *5 (quoting Compl., Ex. A, § B ¶ 3).

Long also contends that the Retainer Agreement affirmatively obligated Burstein to represent him in the Qui Tam Action for a pure contingency fee, and thus that Burstein's breach deprived him "of his right to be represented for no out-of-pocket fees[.]" (Def. Opp. 9). The Court previously addressed this argument as well, finding it to be a "close call." *Burstein II*, 2017 WL 3535004, at *6. Burstein does not make it less so by arguing now that when Long retained it for the Qui Tam Action, "the only thing Long gave up in return was the right to retain a different attorney to bring the action[.]" (Pl. Br. 6). The Court agrees with Long that this position lacks merit; it would have been an

---

[5] In a footnote to his opposition memorandum, Long promises to "provide evidence in discovery and at trial ... that Burstein assured him that he would not have to pay any more than $300,000 to prosecute the actions unless he fired Burstein or Burstein legitimately withdrew as counsel." (Def. Opp. 6 n.3). The TAAC contains no mention of this conversation, so the Court will not consider it in evaluating Burstein's motion to dismiss. *See Burstein II*, 2017 WL 3535004, at *9 n.8.

odd contract indeed for Long to pay Burstein and, in return, given up Long's own right to anything. (*See* Def. Opp. 8). Ultimately, however, the TAAC is doomed by Long's omission of any new factual allegations. Without new factual allegations, Long cannot alter the Court's prior determination that damages in the form of legal fees for successor attorneys in the *Parry* and Qui Tam Actions did not flow directly from Burstein's breach and were too speculative to be foreseeable, and that Long did "not adequately plead any facts showing that the parties contemplated" such fees as damages when entering into the Agreement. *Burstein II*, 2017 WL 3535004, at *6. Accordingly, Burstein's motion to dismiss Long's counterclaim for breach of contract is granted insofar as Long seeks damages in the form of legal fees for successor attorneys in the *Parry* or Qui Tam Actions.

The Court observes that the TAAC now seeks recovery of "the full amount of the $300,000 payment made to the Burstein Firm." (TAAC ¶ 109). As mentioned above, Burstein has not moved to dismiss this aspect of Long's counterclaim. (Pl. Br. 4 n.4; Def. Opp. 9 n.5). Therefore, Long's counterclaim for breach of contract survives insofar as it seeks recovery of the $300,000 retainer fee.

### 2. Long's Counterclaims for Legal Malpractice in the *Parry* and Qui Tam Actions Are Dismissed

#### a. Applicable Law

To prevail on a legal malpractice claim under New York law, a plaintiff must show "[i] that the attorney was negligent, [ii] that the negligence was a proximate cause of the injury [iii] and that [the plaintiff] suffered actual and

ascertainable damages." *Rubens* v. *Mason*, 527 F.3d 252, 254-55 (2d Cir. 2008) (internal quotation marks and citation omitted). A plaintiff must prove proximate cause through a "case within a case," such that "a reasonable fact-finder in the present case could conclude that a reasonable fact-finder in the underlying suit would have arrived at a different result but for the attorney's negligence." *Riker* v. *Premier Cap., LLC*, No. 15 Civ. 8293 (ALC), 2016 WL 5334980, at *9 (S.D.N.Y. Sept. 22, 2016) (internal citation and quotation marks omitted).

### b.   Discussion

#### i.   The *Parry* Action

Long first alleges legal malpractice by Burstein in the *Parry* Action. (TAAC ¶¶ 113-17). The Court's prior Opinion held that the SAAC failed to provide notice of, and failed plausibly to allege facts supporting, any non-FCA malpractice claims. *See Burstein II*, 2017 WL 3535004, at *8. In response, the TAAC adds new allegations that: (i) Burstein "complete[ly] disregard[ed] [] the *Parry Action* for over two years," thereby causing Parry's counsel to conclude that Long "had lost the will or the financial ability to proceed" and that Long's attorney Burstein "did not believe in the merits of the case"; (ii) several months prior to Burstein's engagement, Parry's counsel had "indicated that [Parry] would consider a mediation," which mediation did not ultimately occur; and (iii) Parry had failed to develop "smoking gun" evidence. (TAAC ¶¶ 113-15). In short, Long contends that Burstein's "complete neglect of, lack of any advocacy

in, and pretextual withdrawal from, [the *Parry* Action] … destroyed the concrete opportunity of Dr. Long to settle the case for $2 million." (Def. Opp. 10).

These additional allegations do not repair the defects in Long's prior pleading. To start, the TAAC still does not plead sufficient facts to show that Burstein's legal representation of Long in the *Parry* Action was negligent. Long has *not* plausibly alleged that Burstein completely disregarded the *Parry* Action for more than two years; according to the TAAC itself, after being retained to work on the matter in May 2013, Burstein filed an amended complaint, successfully litigated a motion to dismiss, and began work on discovery, all before obtaining court permission to withdraw from representation in July 2015. (TAAC ¶¶ 50-57). The TAAC's remaining new allegations address deficient conduct by *Parry*, not by Burstein. (*Id.* at ¶¶ 115-17 (alleging that Parry had failed to develop "available smoking gun evidence" in the earlier defamation suit against NMC, and that "Parry would have been willing to settle the *Parry* Action")).

It is more difficult to determine whether the TAAC adequately pleads that Burstein's conduct proximately injured Long in the *Parry* Action, which here means that a reasonable fact-finder "could conclude that a reasonable fact-finder in the [*Parry* Action] would have arrived at a different result but for [Burstein's] negligence." *Riker*, 2016 WL 5334980, at *9. Following Burstein's withdrawal, Long retained new counsel and then lost the suit on summary judgment. *Long* v. *Parry*, 679 F. App'x 60, 63 (2d Cir. 2017) (summary order); *see also Long* v. *Parry*, No. 12 Civ. 81 (WKS), 2016 WL 814861 (D. Vt. Feb. 29,

2016). The parties dispute here whether the grant of summary judgment evinces that the *Parry* Action suffered from Burstein's conduct or that the action was nonviable from the get-go. (Pl. Br. 8-9; Def. Opp. 12-13). The parties also dispute whether the substitution of new counsel broke the causal chain between Burstein's conduct and any lost settlement value. (*Id.*). The Court need not resolve these disputes because even if the *Parry* Action were once viable, and even if the chain of causation survived the substitution of counsel, these determinations would not save the TAAC: The TAAC fails adequately to plead that the *Parry* Action would have differed "but for [Burstein's] *negligence*" because, as stated above, the TAAC fails to allege that any of Burstein's conduct was negligent. *Riker*, 2016 WL 5334980, at *9 (emphasis added).

As a separate deficiency, Long pleads damages that are purely speculative, in the form of the wished-for settlement award. *Cf. Burstein II*, 2017 WL 3535004, at *5. The TAAC's allegations that counsel for Parry at one point indicated that Parry would consider mediation, and that the mediation never occurred, are not enough to make the leap from speculative damages to actual and ascertainable damages. (TAAC ¶ 114; Def. Opp. 13-14).[6] As a result, the Court agrees with Burstein that the TAAC fails to allege damages in the *Parry* Action that are either actual or ascertainable. (*See* Pl. Br. 7-8).

---

[6] The Court agrees with Burstein that the "wrongdoer" rule, which shifts the burden of establishing the amount of damages in cases where the existence of at least some damages is certain, does not apply here because the TAAC fails to plead the existence of certain damages. (Pl. Br. 9; TAAC ¶ 117). *See also Schonfeld* v. *Hilliard*, 218 F.3d 164, 175 (2d Cir. 2000).

### ii.     The Qui Tam Action

Long also alleges legal malpractice by Burstein in the Qui Tam Action, which, as mentioned, was a potential FCA claim against NMC for allegedly filing fraudulent certifications for Medicare and Medicaid enrollment. According to the TAAC, Burstein committed to filing the Qui Tam Action, told Long not to retain a different attorney for that purpose, and then sat on the case doing next to nothing until the claims were rendered untimely. (TAAC ¶¶ 62-69; Def. Opp. 10-11). Based on this conduct, the Court finds, and the parties do not dispute, that Long has plausibly alleged the first element of a legal malpractice claim: that Burstein's legal representation in the Qui Tam Action was negligent. However, this determination does not end the Court's inquiry.

To determine whether the TAAC satisfies the "case within a case" requirement, the Court must evaluate whether the underlying allegations in the potential Qui Tam Action would have been sufficient to state a claim under the FCA. The FCA permits a *qui tam* relator to bring a claim against an entity that "'knowingly presents … a false or fraudulent claim for payment or approval to the Federal Government.'" *State Farm Fire & Cas. Co.* v. *U.S. ex rel. Rigsby*, 137 S. Ct. 436, 440 (2016) (quoting 31 U.S.C. § 3729). In addition to the standard pleading requirements set forth in *Iqbal*, 556 U.S. at 678, and *Twombly*, 550 U.S. at 570, Federal Rule of Civil Procedure 9(b) imposes a further, heightened pleading standard on *qui tam* relators that generally requires the party alleging fraud to "[i] specify the statements that the plaintiff contends were fraudulent,

[ii] identify the speaker, [iii] state where and when the statements were made, and [iv] explain why the statements were fraudulent." *United States ex rel. Chorches for Bankr. Estate of Fabula* v. *Am. Med. Response, Inc.*, 865 F.3d 71, 81 (2d Cir. 2017) (internal citations and quotation marks omitted). "Where pleading is permitted on information and belief in a complaint that alleges fraud (and is therefore subject to Rule 9(b)), [the Second Circuit requires] that the complaint adduce specific facts supporting a *strong inference* of fraud." *Id.* at 82 (internal citation and quotation marks omitted) (emphasis added). This added requirement "serves to 'provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit.'" *Rombach* v. *Chang*, 355 F.3d 164, 171 (2d Cir. 2004) (quoting *O'Brien* v. *Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991)).

The Court previously determined that the SAAC did "not plead sufficient facts to show that [Long] could have prevailed in the Qui Tam Action had Burstein upheld his contractual duty to prepare and litigate the claim." *Burstein II*, 2017 WL 3535004, at *8. The SAAC's allegations that NMC was filing "fraudulent Medicare and Medicaid claims" failed to meet the heightened pleading standard under Rule 9(b) because Long offered no explanation for how he arrived at his belief about NMC's conduct, no explanation for how that belief related to the alleged infections of his patients, and no additional facts to bolster his claim. *Id.* at *6-7. ███████████████████████ ████████████████████████████████████████████████





The public disclosure provision of the FCA was amended in 2010 to read

in relevant part:

> The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed [i] in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party[.]

31 U.S.C. § 3730(e)(4)(A) (2010).[7] Accordingly, at the time Burstein was

retained in May 2013, the public disclosure provision applied only if

---

[7] Relying in part on the parties' submissions, the Court's prior Opinion mistakenly cited *U.S. ex rel. Kreindler & Kreindler* v. *United Techs. Corp.*, 985 F.2d 1148, 1157-58 (2d Cir. 1993), which construed a pre-2010 version of the FCA, without discussing the 2010 amendment. *See Burstein II*, 2017 WL 3535004, at *7 n.6. (*See also* Dkt. #55 at 20-21 n.8; Dkt. #58 at 20-21). Any errors caused by reliance on that citation are remedied in this Opinion. The Court observes that Burstein's opening memorandum in support of its current motion presents an extended discussion of the pre-amendment version of the FCA, along with pre-amendment case law, again without mentioning the 2010 amendment. (Pl. Br. 14-17). Not until Long's opposition memorandum called the amendment to the Court's attention did Burstein acknowledge it in a footnote. (Def. Opp. 21-23; Pl. Reply 7 n.8).

substantially the same allegations "were publicly disclosed through *one of the sources listed* in the statute." *Ping Chen ex rel. U.S.* v. *EMSL Analytical, Inc.*, 966 F. Supp. 2d 282, 296 (S.D.N.Y. 2013) (emphasis added) (internal citation and quotation marks omitted) (emphasis added). Long asserts that he based his post-2007 allegations in part on litigation documents from the *Triad* and *Parry* Actions. (TAAC ¶ 132). As neither the Government nor its agent was a party to the *Triad* or *Parry* Actions, the public disclosure provision of the FCA would not have barred a *qui tam* claim based on discovery and filings in those actions, at least as to Long's allegation that NMC submitted a fraudulent certification in September 2013.[8]

_____

[8]    The 2010 amendment of the FCA withdrew "from triggering the public disclosure bar allegations disclosed in state court lawsuits, or federal lawsuits in which the federal government is not a party." *United States ex rel. JDJ & Assoc. LLP* v. *Natixis*, No. 15 Civ. 5429 (PKC), 2017 WL 4357797, at *5 (S.D.N.Y. Sept. 29, 2017). As Long points out, there is an unresolved issue in the Second Circuit as to which version applies to post-amendment actions based on pre-amendment fraud. (Def. Opp. 22). However that scenario is ultimately resolved, the legal ambiguity pertains solely to NMC's alleged September 2009 certification and would not have affected a *qui tam* action based on NMC's alleged certifications in September 2013.

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████

Burstein also contends that the TAAC fails to state a claim of fraud by implied certification because it does not allege any "specific representations about the services for which [NMC] allegedly sought reimbursement," or any "noncompliance with material statutory, regulatory or contractual requirements." (Pl. Br. 18-19 (citing *United States ex rel. Kolchinsky* v. *Moody's Corp*, 238 F. Supp. 3d 550, 558 (S.D.N.Y. 2017))). The Court also disagrees. ██

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████

And finally, Burstein maintains that the Qui Tam Action was barred by a 2008 release that Long signed as part of the settlement agreement in the *Triad*

Action. (Pl. Br. 11-14). The Court agrees with Long that the release was not appended to, incorporated by reference, or integral to the TAAC. (Def. Opp. 18). As such, the Court may not consider it in evaluating Burstein's motion to dismiss. *See Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (finding that district courts may consider "documents appended to the complaint or incorporated in the complaint by reference" when assessing the sufficiency of a pleading); *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (holding that documents that may be considered in determining a motion to dismiss are those that are "integral" to the claims alleged even if not incorporated in the complaint by reference). The TAAC makes no mention of the release, and the Court finds nothing to suggest that Long "relied upon [it] in framing" his counterclaims. *Chambers*, 282 F.3d at 153. Burstein points out that district courts may consider documents beyond the pleadings where the claimant apparently is attempting to omit "matters of which as pleaders they had notice and which were integral to their claim — and that they apparently most wanted to avoid[.]" *L-7 Designs, Inc.* v. *Old Navy, LLC,* 647 F.3d 419, 422 (2d Cir. 2011). But to fall under this exception, the document in question must be one on which the pleading party "solely relies and which is integral to the complaint[.]" *Cortec Indus., Inc.* v. *Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991). That is not the case here, as the information included in the release does not form the basis of any of Long's counterclaims.

Ultimately, Burstein loses several battles but wins the war on this issue: The Court finds that the TAAC fails to plead sufficient facts to show that Long

could have prevailed in the Qui Tam Action had Burstein prepared and litigated the claim because, as Burstein correctly notes, it does not adequately plead scienter. (*See* Pl. Br. 21). That is, the TAAC does not satisfy Rule 9(b)'s heightened standard for pleading either promissory fraud or fraud by implied certification because it fails to detail specific and plausible facts to support a strong inference that NMC *knew* that any of its explanations for the infections was inaccurate, and thus that any of its representations to the Government was "false or fraudulent." *State Farm Fire & Cas. Co.*, 137 S. Ct. at 440.

███████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████ The only inference that can be drawn from these allegations is that NMC believed these alternate explanations to be correct. Tellingly, Long has failed to plead any specific facts to support a strong inference — or indeed an inference of any kind — that NMC *knew* these alternate explanations (and hence its own certifications) were false. ███████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████

█████ And, as a result, the TAAC fails plausibly to allege that "a reasonable fact-finder in the present case could conclude that a reasonable fact-finder in the [Qui Tam Action] would have arrived at a different result but for [Burstein's] negligence." *Riker*, 2016 WL 5334980, at *9 (internal quotation marks and citation omitted).

For all of these reasons, Burstein's motion to dismiss Long's malpractice counterclaims concerning both the *Parry* and Qui Tam Actions is granted.

### 3. Long's Breach of Fiduciary Duty Counterclaim Is Dismissed in Part

To establish a *prima facie* case for breach of fiduciary duty in New York, a plaintiff must allege "(i) a duty; (ii) a knowing breach of the duty; and (iii) damages resulting therefrom." *Johnson* v. *Nextel Commc'ns, Inc.*, 660 F.3d 131, 141 (2d Cir. 2011). "A lawyer breaches a fiduciary duty to the client when the lawyer fails to repay the unearned retainer when the engagement ends." *In re Dewey & Leboeuf LLP*, 493 B.R. 421, 433 (Bankr. S.D.N.Y. 2013). The Court's prior Opinion held that the SAAC failed to make out a *prima facie* case for breach of fiduciary duty because, while it alleged that Burstein had "act[ed] in his own self-interest, ma[de] misstatements to the *Parry* Court, and fail[ed] to modify" a protective order issued in the *Triad* Action, Long did not explain why these actions "caused him to retain new counsel" and thus caused

---

9 ██████████████████████████████████████████

damages in the form of cover legal fees for successor attorneys. *Burstein II*, 2017 WL 3535004, at *9. Nor was it evident from the face of the SAAC that Long intended to claim that Burstein's withdrawal from representation in the *Parry* Action was itself a breach of fiduciary duty. *Id.*

The TAAC adds new allegations that Burstein breached his fiduciary duty by: (i) failing to act in the *Parry* Action; and (ii) withdrawing from the representation based on pretextual grounds. (TAAC ¶¶ 176-77, 181-85). Long alleges that these breaches caused damages in the form of legal fees for successor attorneys and a lost settlement award in the *Parry* Action. (*Id.* at ¶¶ 186-87, 189). Long also claims that, "as a faithless fiduciary, [Burstein] has forfeited any right to any compensation for work performed by [Burstein] under the Retainer Agreement, and therefore must return the $300,000 flat fee that the Burstein Firm was paid." (*Id.* at ¶ 191).

As explained above, Long has not plausibly alleged that Burstein failed to act in the *Parry* Action; the TAAC itself documents that Burstein filed an amended complaint, successfully litigated a motion to dismiss, and began work on discovery, before obtaining court permission to withdraw from representation. (TAAC ¶¶ 50-57). Long has also not plausibly alleged that Burstein's withdrawal was a *knowing* breach of fiduciary duty. United States District Judge William K. Sessions of the District of Vermont granted Burstein's motion to withdraw on the basis that "the relationship between the Burstein firm and Dr. Long has broken down. ... [and] termination of the relationship would be in the best interest of both." *Long* v. *Parry*, No. 12 Civ. 81 (WKS),

2015 WL 13186215, at *1 (D. Vt. July 8, 2015) (internal citation and quotation marks omitted). That Burstein may have had additional reasons to withdraw does not rebut either the court's finding that doing so was in the best interests of the parties or Burstein's good faith reliance on that finding. Therefore, alleging that Burstein had ulterior motives for withdrawal does not state a claim for breach of fiduciary duty.

However, the Court finds that the TAAC's allegation that Burstein did not earn the full $300,000 fee because all "services required to be provided under the Retainer Agreement" were not fully performed may have merit. (TAAC ¶ 18). The TAAC alleges that Burstein withdrew from representation in the *Parry* Action before performing "all work required for discovery, pretrial proceedings, trial or appeals[.]" (*Id.*, Ex. A, § B1 at ¶¶ 1-2). Obtaining court permission to withdraw did not eliminate Burstein's fiduciary duty "to repay the unearned retainer when the engagement ends." *In re Dewey & Leboeuf LLP*, 493 B.R. at 433.

Burstein asserts that the damages for Long's breach of fiduciary duty counterclaim to recoup the unearned retainer are duplicative of those sought on his breach of contract counterclaim. (Pl. Br. 24 n.7). But the specter of double recovery, while a concern that may require redress at a later stage of litigation, does not mean that the claims must be dismissed as duplicative. As the Court's prior Opinion explained, "the Retainer Agreement created a relationship between Burstein and Long that was not only contractual, but also fiduciary. And where a fiduciary duty exists independent from a contract …

24

claims for breach of contract and breach of fiduciary duty that arise from the same facts can stand together." *Burstein II*, 2017 WL 3535004 at *9. At this stage in the litigation, the TAAC adequately pleads that Burstein breached its fiduciary duty by failing to return any portion of the $300,000 retainer following withdrawal.

Burstein's motion to dismiss Long's breach of fiduciary duty counterclaim is thus granted insofar as Long seeks damages in the form of legal fees for successor attorneys and a lost settlement award in the *Parry* Action, and denied insofar as Long seeks recovery of the unearned retainer.

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is GRANTED in part and DENIED in part. Burstein is hereby directed to file an Answer to the TAAC by **October 19, 2018**. In addition, both parties are to submit a joint letter to the Court on or before **October 19, 2018**, addressing the issue of what, if any, additional discovery is required in light of the Court's Opinion.

The Clerk of Court is directed to terminate the motion at Docket Entry 93.

SO ORDERED.

Dated:     September 20, 2018
           New York, New York

_____
     KATHERINE POLK FAILLA
     United States District Judge